UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IKRAM MRANI,

                    Plaintiff,

  -against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION,

                    Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/24/2022

No. 21-CV-1072 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Ikram Mrani ("Plaintiff") commenced this action on February 6, 2021 against Defendant New York State Department of Corrections and Community Supervision ("Defendant" or "NYSDOCCS"). (ECF No. 1.) Plaintiff filed an Amended Complaint on April 9, 2021. (ECF No. 13.) Plaintiff, a corrections officer at Fishkill Correctional Facility, brings a claim under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, alleging Defendant failed to reasonably accommodate his disabilities. (*Id.*) Before the Court is Defendant's motion to dismiss Plaintiff's Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 19.)

For the following reasons, Defendant's motion to dismiss is denied.

**BACKGROUND**

The following facts are drawn from Plaintiff's Amended Complaint and are assumed as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff is a corrections officer at Fishkill Correctional Facility ("Fishkill"). (Am. Compl. ¶ 13.) Defendant NYSDOCCS is an agency within the executive branch in the state of New York

1

and operates New York's correctional facilities, including Fishkill. (*Id.* ¶¶ 10–11.) Plaintiff has been employed by NYSDOCCS since September 12, 2005. (*Id.* ¶ 13.)

### I.     Plaintiff's Injuries

Plaintiff has suffered several work-related injuries. (*Id.* ¶ 14.) In December 2016, Plaintiff was assaulted by an inmate and, during a restraint of an inmate, injured his back and right hip resulting in his absence from work for approximately six months. (*Id.* ¶ 15.) On September 7, 2017, Plaintiff was injured again when he assisted another corrections officer in restraining a violent inmate. (*Id.* ¶ 16.) During that incident, Plaintiff injured his right wrist, right hip, and left knee and suffered a tear of the medial and lateral meniscus and a triangular fibrocartilage complex tear of his right wrist. (*Id.*) On December 20, 2018, Plaintiff injured his back and was diagnosed with a cervical disc herniation and lumbar disc herniation, among other abnormalities of the back, and was prescribed treatment for pain management. (*Id.* ¶ 17.) By November 11, 2019, Plaintiff complained of neck pain radiating to his upper extremities and consulted a physician who completed an electrodiagnostic study which revealed evidence of left C5-C6 and left C6-C7 radiculopathies. (*Id.* ¶ 18.)

On January 10, 2020, Plaintiff suffered injuries to his knee and shoulder while at work. (*Id.* ¶ 19.) Pursuant to an MRI on May 12, 2020, Plaintiff was shown to have an acute oblique tear of the posterior horn of the medial meniscus and supraspinatus tendinosis and bicipital tenosynovitis in his shoulder. (*Id.*) On January 27, 2020, Plaintiff suffered further back injuries from a situation in which he was involved in the restraint of a combative inmate. (*Id.* ¶ 20.) As a result of the injuries on January 10 and January 27, 2020, Plaintiff took extended leave from work from March 16, 2020 to September 5, 2020. (*Id.* ¶ 22.) At a medical evaluation on March 18, 2020, Plaintiff was determined to have "ambulation dysfunction" and was prescribed physical

therapy, medications, transcutaneous electrical nerve stimulation, and exercises to decrease the pain, stiffness, and swelling of his injuries and to improve movement. (*Id.* ¶ 23.) In May 2020, Plaintiff was diagnosed with right knee and right shoulder strain or sprain. (*Id.* ¶ 24.)

Plaintiff returned to work on or around September 5, 2020, during which he was still suffering from pain and was physically limited. (*Id.* ¶ 25.) Plaintiff asked for assistance for colleagues to lift property and to look under foot lockers of inmates because of his inability to lift or bend down. (*Id.* ¶ 26.) On or about September 12, 2020, Plaintiff began wearing a lumbar support belt to work to ameliorate his symptoms but did not notice an improvement. (*Id.* ¶ 27.)

Within two weeks of returning to work, Plaintiff's pain increased. (*Id.* ¶ 28.) Plaintiff was evaluated by a physician on September 21, 2020, who determined that Plaintiff had pain and stiffness to his right lower back as well as pain and stiffness in his right shoulder and right knee due to injuries suffered on January 10, 2020. (*Id.* ¶ 29.) On September 21, 2020, Plaintiff's physician recommended that he be provided with reasonable accommodations in the form of light duty assignment at work. (*Id.* ¶ 30.) Dr. Cabatu[1] completed an Estimated Physical Capacities Form (EPC Form) as required by NYSDOCCS in order to request a reasonable accommodation due to a disability for Plaintiff. (*Id.* ¶ 31.) Dr. Cabatu opined on the EPC Form that Plaintiff's injuries prevented him from walking more than two hours or standing more than two hours in an eight-hour workday and prevented him from lifting more than 21 pounds or frequently reaching above his head. (*Id.* ¶ 32.) Plaintiff was deemed occasionally able to lift between 11 and 20 pounds. (*Id.*) As of September 21, 2020, Plaintiff was diagnosed with lumbar strain and disc herniations and suffered limitations, including the inability to restrain combative clients. (*Id.* ¶ 33.)

---

[1] The Amended Complaint does not specify whether Dr. Cabatu is the physician who attended to Plaintiff on September 21, 2020 but Dr. Cabatu was alleged to have evaluated Plaintiff and completed the EPC Form. (*See* Am. Compl. ¶ 31.)

Dr. Cabatu concluded Plaintiff's injuries also prevented him from squatting or crawling and Plaintiff severed severe pain when he tries to bend down. (*Id.* ¶ 34.)

Due to pain in his lower back and knee, Plaintiff was unable to perform household tasks like going grocery shopping because his pain was exacerbated when he walked through the supermarket or bent down to retrieve items, and because he was unable to lift heavy bags. (*Id.* ¶ 35.) Plaintiff's children took over manual household chores such as vacuuming, cleaning, shoveling snow and lifting groceries. (*Id.* ¶ 37.) Plaintiff's injuries also interfered with his ability to reach down to take off his socks and shoes and he was unable to reach to his lower extremities without pain and limitations. (*Id.* ¶ 38.) By September 2020, Plaintiff's back injuries made it difficult for him to walk or stand more than 10 to 15 minutes. (*Id.* ¶ 39.)

## II.     Plaintiff's Assignment To Special Watch

On September 22, 2020, Plaintiff provided the EPC Form to NYSDOCCS and requested an accommodation that included an assignment to light duty with restrictions recommended by his physician, including avoiding any restraints of combative inmates. (*Id.* ¶ 41.) Plaintiff's physician estimated on the EPC Form that Plaintiff might be able to return to full duty on or about November 18, 2020. (*Id.* ¶ 40.)

On September 23, 2020, Plaintiff was informed, without any prior "interactive dialogue between any representative of NYSDOCCS [and] Plaintiff," that he was assigned to a special watch of an inmate in the infirmary who was believed to be at risk of suicide. (*Id.* ¶¶ 42–43.) "Special watch" involves one-on-one supervision of inmates who are at risk of self-harm or suicide or who are believed to have ingested drugs or weapons. (*Id.* ¶ 44.) Special watches may involve physical interaction with an inmate. (*Id.*) Plaintiff's special watch assignment required him to monitor the inmate throughout his shift and to provide meals to the inmate in his cell. (*Id.* ¶ 50.)

Because there was no hatch on the inmate's door, Plaintiff had to enter the inmate's cell in order to hand the meal tray to the inmate. (*Id.* ¶ 51.) Plaintiff was informed by his supervisor Sergeant Simonson that "if Plaintiff had to enter the cell, he should do so to perform his duties." (*Id.* ¶ 52.) The inmate to whom Plaintiff was assigned for special watch had been previously convicted of violent crimes, although Plaintiff was unaware of the inmate's prior convictions or that the inmate was combative at the time of the assignment. (*Id.* ¶¶ 54–55.)

On September 23, 2020,[2] at around 7:10 A.M. during his special watch duty, Plaintiff reached into the inmate's cell to provide breakfast during which the inmate assaulted Plaintiff by pulling him by the arm and slamming Plaintiff to the wall before Plaintiff was able to restrain the inmate. (*Id.* ¶¶ 56, 67.)

Plaintiff alleges other job duties existed at NYSDOCCS that would have accommodated Plaintiff's physical limitations. (*Id.* ¶¶ 44–45.) For instance, there were positions in which the corrections officers would sit and assist with duties relating to security camera surveillance or work in the administrative office. (*Id.* ¶ 46.)

### III. Challenges To Special Watch Assignments To Officers On Light Duty

Plaintiff alleges that as of September 23, 2020, NYSDOCCS knew assigning employees on light duty to a "special watch" duty would place the employees who are physically limited from restraining combative inmates into situations that compromised their safety. (*Id.* ¶ 64.) For about 25 years, NYSDOCCS had a policy of assigning corrections officers on light duty to assignments that did not involve "special watches." (*Id.* ¶ 57.) On July 16, 2018, NYSDOCCS issued an order that provided special watches may qualify as appropriate assignments for any employees seeking

---

[2] The Amended Complaint in Paragraph 57 states the incident occurred on September 23, 2021. (Am. Compl. ¶ 57.) However, this appears to be a typo as the rest of the Amended Complaint alleges the incident took place the morning of September 23, 2020. (*See id.* ¶¶ 56, 65.)

light duty. (*Id.* ¶¶ 58–59.) On November 13, 2018, the New York State Correctional Officers and Police Benevolent Association, Inc. ("COPBA"), the certified bargaining representative of corrections officers and sergeants employed by NYSDOCCS including Plaintiff, file an improper practice charge with the New York State Public Employment Relations Board ("PERB") alleging that the July 16, 2018 directive violated Article 14 of the Public Employees' Fair Employment Act and constituted a failure to bargain in good faith. (*Id.* ¶ 60.) COPBA alleged that NYSDOCCS's directive impacted the safety and security of corrections officers and affected procedures for light duty assignments. (*Id.* ¶ 61.) Hearings relating to the PERB charge were held before an Administrative Law Judge in fall of 2020 but the proceedings were not yet completed when Plaintiff was assigned to special watch. (*Id.* ¶ 62.) As of September 23, 2020, NYSDOCCS disputed COPBA's claims and refused to retract or alter the July 16, 2018 directive. (*Id.* ¶ 63.)

After the special watch incident on September 23, 2020, Plaintiff filed a grievance through procedures provided for in the COPBA collective bargaining agreement. (*Id.* ¶ 65.) On February 1, 2021, Plaintiff received a response from NYSDOCCS in which he was informed that the Superintendent of the Fishkill Correctional Facility had issued a directive to cease assigning officers on light duty to special watches. (*Id.* ¶ 66.)

IV.     **Plaintiff's Injuries From Special Watch Assignment**

As a result of the incident on September 23, 2020, Plaintiff's existing injuries were exacerbated, and Plaintiff suffered new physical injuries and emotional distress. (*Id.* ¶ 67.) A nurse at Fishkill, Nurse Weinut, examined Plaintiff and documented a contusion to the left back of his head, pulsating pain emanating from his lower back extending down his right leg which caused pain when Plaintiff walked, sat, or stood, multiple lacerations from scratches to his arm, throbbing neck pain, left shoulder pain that extended to his fingertips which caused decreased grip

6

strength in his left hand, and right hip pain. (*Id.* ¶ 68.) Plaintiff was taken to Vassar Brothers Medical Center by ambulance where he was diagnosed with a contusion to the head, left shoulder strain, neck strain, and strain of his right groin. (*Id.* ¶ 70.) Upon discharge from the hospital, Plaintiff was informed he could not return to work until he was evaluated by an orthopedist. (*Id.* ¶ 71.)

As a result of the September 23, 2020 incident, Plaintiff was approved for workers' compensation benefits and has been unable to work since the incident. (*Id.* ¶ 72.) Plaintiff suffered loss of income, emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses. (*Id.* ¶ 73.)

V.    **The Instant Action**

Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") on November 19, 2020. (*Id.* ¶ 74.) The EEOC issued a Dismissal and Notice of Right to Sue on November 30, 2020 (*id.*), and Plaintiff commenced the instant action on February 6, 2021 (ECF No. 1). On April 9, 2021, Plaintiff filed an Amended Complaint alleging violation of Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 *et seq.* (ECF No. 14.) On July 13, 2021, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 19–20.) Plaintiff opposed the motion. (ECF No. 21.) Defendant filed a reply in support of its motion. (ECF No. 22.) On July 21, 2021, Plaintiff filed a sur-reply to address new Second Circuit legal authority relevant to the issues before the Court. (ECF No. 27.) Defendant filed a response on July 26, 2021. (ECF No. 28.)

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## DISCUSSION

Defendant seeks to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). ("Def. Mot.", ECF No. 20.)

### I. Section 504 Claim

Plaintiff brings a sole cause of action under Section 504 of the Rehabilitation Act ("Section 504") against Defendant for failure to provide a reasonable accommodation. (Am. Compl. at 11–13.)

Section 504 provides: "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Courts use the standards set forth in the Americans with Disabilities Act ("ADA") in determining whether employers have violated the RA. *See Lucenti v. Potter*, 432 F. Supp. 2d 347, 360 (S.D.N.Y. 2006). To bring a claim for failure to reasonably accommodate a disability, Plaintiff must allege that: (1) he is a person with a

disability within the meaning of the statute; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation Plaintiff could perform the essential functions of his job; and (4) the employer refused to make such accommodations. *See McBride v. BIC Consumer Prods. Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009).

### a. Individual With a Disability

Regulations promulgated under the RA by the Department of Health and Human Services define a "handicapped person" as "any person who (i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment," 45 C.F.R. § 84.3(j)(1), and a "qualified handicapped person" as a person who "with reasonable accommodation, can perform the essential functions of the job in question." 45 C.F.R. § 84.3(l)(1). Plaintiff alleges he is a "handicapped person" within the meaning of Section 504 because he had "serious back, knee and shoulder injuries that substantially interfered with one or more of his major life activities, including walking, standing, lifting, and bending." (Am. Compl. ¶ 83.)

Defendant contends that Plaintiff is not an individual with a disability as covered by the RA. (Def. Mot. at 5.) Defendant argues that Plaintiff's injuries appear to be temporary and that for the purposes of establishing a RA claim, temporary restrictions are not substantially limiting so as to render the individual as disabled. (*Id.*) As the Second Circuit held in *Hamilton v. Westchester Cty.*, "a short-term injury can qualify as an actional disability under the ADA." 3 F.4th 86 (2d Cir. 2021). And, as Defendant concedes, *Hamilton* controls and accordingly even if Plaintiff's impairment was in fact temporary, that fact alone does not preclude him from qualifying as an individual with disability under the statute. ("Def. Sur-reply," ECF No. 28 at 3.)

The Court finds that Plaintiff has sufficiently alleged he is an individual with disability. Indeed, Plaintiff alleges in detail his various injuries and how they interfere with his major life activities, including getting groceries, doing household chores, standing or walking for more than 2 hours, lifting heavy objects, and bending down. (*See* Am. Compl. ¶¶ 32–39.)

### b. Reasonable Accommodations

Plaintiff alleges Defendant failed to provide him with reasonable accommodation by assigning him to special watch duty, which entailed direct contact with inmates. (Am. Compl. at 12.) Plaintiff alleges Defendant was on notice of his physical limitations when he submitted the EPC Form, which requested for light duty assignments and avoidance of any restraints of combative inmates. (*Id.* ¶¶ 41, 85.) However, after Plaintiff submitted the EPC Form, Plaintiff was assigned to special watch, which required him to provide one-on-one supervision of a combative inmate. (*Id.* at 7.) As part of special watch, Plaintiff was required to enter the cell to deliver the inmate's meal. (*Id.* ¶¶ 50–52.) While delivering a meal, Plaintiff was attacked by the inmate and needed to restrain the inmate. (*Id.* ¶ 56.) Plaintiff alleges that Defendant could have accommodated his physical limitations by assigning him to other existing duties. (*Id.* ¶ 46.)

Defendant argues that there was no denial of reasonable accommodation because Plaintiff received the accommodation he requested—a light duty assignment. (Def. Mot. at 6.) At the time of Plaintiff's request, NYSDOCCS policy permitted light duty assignments to encompass special watches. (*Id.*) Furthermore, Defendant argues that Plaintiff did not allege there were any vacant job placements for which Plaintiff qualified for at the time of his request. (*Id.* at 7.)

The Court is not persuaded by Defendant's arguments and finds that Plaintiff has adequately alleged he was denied reasonable accommodations. Plaintiff alleges his EPC Form not only requested for a light duty assignment but also included "restrictions recommended by his

10

physician, including avoiding any restraints of combative inmates." (Am Compl. ¶ 41.) Although Defendant indeed assigned Plaintiff to a light duty assignment as requested, Plaintiff alleges Defendant failed to provide an assignment which accommodated Plaintiff's physical limitations. (*Id.* ¶ 41.)  Indeed, Plaintiff alleges "other duties existed at NYSDOCCS that would have accommodated [his] physical limitations" such as being "assigned to a position in which he would be sitting and assisting with duties relating to security camera surveillance, or assigned to work in an administrative office." (*Id.* ¶¶ 45–46.)  Plaintiff sufficiently alleges that Defendant failed to make reasonable accommodations to his known physical limitations.

Accordingly, the Court finds that Plaintiff has adequately pled a Section 504 claim. Plaintiff has pled that he is an individual with disability under RA, that Defendant had notice of his disability, that with reasonable accommodation Plaintiff could have continued to perform his duties as a corrections officer, and that Defendant refused to make such accommodations. Defendant's motion to dismiss is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is DENIED.  Defendant is directed to file an answer to Plaintiff's Amended Complaint by April 15, 2022.  The parties are directed to file a Case Management Plan and Scheduling Order on or before April 15, 2022 (template attached).  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 19.

Dated:   March 24, 2022                                         SO ORDERED:
         White Plains, New York

                                                                _____
                                                                NELSON S. ROMÁN
                                                                United States District Judge

UNITED STATES DISTRICT COURT  Rev. Jan. 2012
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

                                         Plaintiff(s),      **CIVIL CASE DISCOVERY PLAN**
                                                             **AND SCHEDULING ORDER**
    - against -

                                         Defendant(s).     _____ CV _____ (NSR)

-------------------------------------------------------------x

      This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

    a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b. Depositions shall proceed concurrently.

    c. Whenever possible, unless counsel agree otherwise or the Court so orders,

        non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
      _____

                                                                         Nelson S. Román, U.S. District Judge